M'GILVERY, Appellant, v. MOORHEAD et al., Respondent.

Where a joint contract was made by M. and C., for the purchase of a quantity of flour of defendants, and the defendants delivered one portion of the flour to M., and another to C., on their respective orders, and received payment from them severally, and settled with C., and then cancelled the contract with regard to him, and M. afterwards sued for damages, alleged to have been sustained by him alone, on the contract, Held, that if plaintiff relied upon the original contract between him and C. and the defendants, he could not sue without joining C. in the action.

APPEAL from the Fourth Judicial District.

The plaintiff's complaint set forth, that defendants were partners in trade, and that on the 21st of November, 1851, the plaintiff, together with Chapman, purchased of defendants, all of their remaining stock of Chili flour, amounting to 6151 bags, of 200 pounds each, at the price, round, of        payable, $8000 in advance, to be deducted from the last payment, and the balance to the amount of such order, as the same should be given for delivery; that said lot of 6151 bags of flour was made up of several smaller lots, parts of different cargoes, and was represented by defendants, to the plaintiff and Chapman, at the time of purchase, as being composed of 4080 bags of merchantable flour, and the balance of damaged flour, not strictly merchantable, yet proper for breadstuff. That although said purchase was made in the joint names of plaintiff and the said Chapman, it was understood and agreed between them, and between them and the defendants, that plaintiff was to have of the lot 3000 full bags, of two quintals or 200 pounds each, of merchantable flour, and the said Chapman the balance of the merchantable flour, and all of the damaged or inferior; that defendants had delivered to said Chapman, his portion of the said purchase as aforesaid, and received payment therefor; that plaintiff had received all his complement of said lot, except 100 bags of merchantable flour, and made payment therefor, as stipulated in the contract, except 495 bags of damaged flour, which he received as part of his complement, the defendants making him a deduction of price therefor, and avers that the whole of the flour delivered to him as

merchantable, and paid for as aforesaid, under his contract, &c., was inferior and not merchantable, as warranted by the defendants' representations, and that he has sustained a loss of one dollar per bag by reason thereof.

The defendants, in their answer, admit a contract respecting a sale of a lot of flour, but deny that it was of the character stated by plaintiff, and aver that the contract was reduced to writing, and set forth a copy in their answer, as follows: "It is hereby understood and agreed by and between Moorhead, Whitehead, and Waddington, of the first part, Freeman, M'Gilvery, and George W. Chapman, of the second part, that the said M., W., and W., have sold, and by these presents do sell unto the said party of the second part, all the flour which they have remaining on hand, unsold, at this date, amounting to 6151 bags, of two quintals (200 pounds) each, more or less, which includes all the 'Java's' cargo, being equal to about 1421 full bags, as well as all the flour that may be otherwise damaged, at the price of $10 per two quintals, payable, $8000, in advance, to be deducted from the last payment, and the balance, to the amount of such order, as the same may be given for the flour, the last order to be given and the payment made on or before the 15th of December next. The flour to be counted over by the parties hereto, and to be placed on the ship 'Regulus' at the expense of the sellers, to be at the expense and risk of the purchasers on and after the 28th instant. In witness whereof, we have hereunto set our hands, at San Francisco, this 21st day of November, 1851.

"FREEMAN M'GILVERY,

"GEORGE W. CHAPMAN,

"by D. WHITNEY.

"Witness,   "MOORHEAD, WHITEHEAD

"JOHN SAMUELS."   "& WADDINGTON."

There was a clause added, extending the time of payment, which has no bearing on the question decided.

The answer also admits that Chapman had received a portion of the flour, and paid for it, and avers that plaintiff has received the remainder of the said flour, and paid for it, and denies all the other allegations in the bill; and further says, that the con-

tract with plaintiff and said Chapman, being a joint, and not a several one, plaintiff is not entitled to sue alone on said contract, but that said Chapman should have been joined in this action, either as plaintiff or defendant, as required by law, and prays to be dismissed, &c.

The plaintiff offered proof of a subsequent valid agreement between M'Gilvery and Chapman and defendants, to sustain the allegations of his bill, which defendants' counsel objected to, on the ground that it would be a variance of the terms of a written contract by a subsequent parol understanding made without any consideration; the court admitted the evidence, and plaintiff excepted. The witness (agent of Chapman) testified that the delivery to Chapman of the flour was separate. He considered the transaction joint only so far as the purchase was concerned. The delivery to M'Gilvery was separate, and the payment separate. At each delivery Chapman paid the purchase-money, to the satisfaction of the parties. The written contract was cancelled, so far as Chapman was concerned, by the witness as agent of Chapman. "I suppose as far as he is concerned, the matter is entirely closed. Chapman claims nothing from defendants." The contract was cancelled at the suggestion of Brown (a clerk of defendants). The understanding between M'Gilvery and Chapman was made before the written contract was signed; could not say that Moorhead knew of it, nor that this understanding was part of the agreement with Moorhead. (It was in evidence that the contract was made with Moorhead, one of the defendants.) There was no contract with defendants as regards this understanding. Subsequent to the execution of the written contract, witness told the defendants of this private understanding, and told them that Chapman, instead of paying $10 for the flour, should only pay $8 75 per sack; they insisted on payment of the $10, but Waddington said that he had money of M'Gilvery's in his hands, and in the final settlement would protect Chapman.

On his cross-examination the witness said the words "cancelled on my part," written on the original agreement, were written by me (Chapman's agent), at the suggestion of Brown (defendants' clerk).

The foregoing is the substance of the evidence adduced by the plaintiff bearing on the question considered in this court.

After the plaintiff had closed, the defendants moved for a non-suit, on the ground that Chapman was a necessary party to the suit, and that the evidence of plaintiff did not sustain his action; which the court overruled, and left it to the jury to say whether Chapman had any remaining interest in the action, and charged, if they found that Chapman had any interest, to find for defendants.

The jury found for plaintiff $     for which judgment was entered, and defendants moved for a new trial, which the court ordered, and from this order plaintiff appealed.

*Hastings* and *Thomas*, for appellant.

It was understood between the parties, that each party purchaser to the contract was to have a certain portion of the flour, and that Chapman had received his portion and accounted for it with plaintiff.

The written contract was cancelled, so far as Chapman was concerned, and he had no interest in it.   Heath and others *v.* Leech & Co. 1 Cal. Rep. 412.

The witness's testimony proved the separate delivery of the flour to Chapman, and that plaintiff was to have 3000 bags of merchantable, &c., and Chapman the damaged flour, &c.

Where a contract has been made, and at a subsequent period, another contract between the parties, having reference to the same subject-matter, but changing the relations of the first, the last controls the first, though there be no such effect expressed.   5 Ham. 380.   Here the first joint contract was annulled as to Chapman, and the last contract made several as to M'Gilvery, who sues for the breach.   See also 2 Greenl. Ev. 30, 31, and 5 N. H. Rep. 136.

No brief for respondent on file.

MURRAY, Chief Justice, delivered the opinion of the court. HEYDENFELDT, Justice, concurred.

This appeal is prosecuted from the order of the court below, granting a new trial.   The only question for our consideration

is, whether Chapman should have been joined as a co-plaintiff. It is evident that if the plaintiff relied upon the original contract between Chapman, himself, and the defendants, he could not sue without joining Chapman.

There is, on the other hand, no sufficient proof going to establish the alteration of the original or the substitution of a new and independent contract, and even if there was, the instructions refused by the court in relation thereto would be error.

Judgment reversed, and new trial ordered.